Jasen, J.
We have considered our prior decision in this case (see 34 NY2d 242) in the light of Blackledge v Perry (417 US 21) and Tollett v Henderson (411 US 258) and adhere to the view that in the circumstances here presented the defendant, with the advice of competent counsel, by his plea of guilty to murder in the second degree, after the defense had rested and before summations had been made, waived his double jeopardy defense.
Blackledge was a challenge on double jeopardy and due process of law grounds to retrial under a North Carolina procedure allowing an appeal from an inferior court to take the form of a trial de novo in the superior court. Expressly predicated on the due process ground alone, the holding was that it was constitutionally impermissible for the State to respond to Perry’s statutory right to appeal by bringing a more serious (felony) charge on the trial de novo; and that the plea of guilty in the superior court did not bar raising the constitutional claim which precluded the State from even prosecuting him on the more serious charge. The court was emphatic that the preclusion was justified by "vindictiveness” or the fear of vindictiveness in the subsequent prosecution (p 28).
Blackledge, as noted, is a due process and not a double jeopardy holding and we do not read the Supreme Court’s due process reasoning as intended to overturn the established body of case law holding that the constitutional immunity from *61 double jeopardy is a personal right which if not timely interposed at trial may be waived (e.g., Kepner v United States, 195 US 100, 131; United States v Young, 503 F2d 1072, 1074; United States v Conley, 503 F2d 520, 521; United States v Scott, 464 F2d 832, 833; United States v Buonomo, 441 F2d 922, 924, cert den 404 US 845; Grogan v United States, 394 F2d 287, 289, cert den 393 US 830) and which likewise may be forfeited by a plea of guilty (Cox v State of Kansas, 456 F2d 1279, 1280; Kistner v United States, 332 F2d 978, 980; United States v Hoyland, 264 F2d 346, 351, cert den 361 US 845; Berg v United States, 176 F2d 122, 125, cert den 338 US 876; Caballero v Hudspeth, 114 F2d 545, 547). Such has long been the law in this State as well. (Former Code Crim Pro, §§ 332, 339; CPL 210.20; see People v Cignarale, 110 NY 23, 29; People ex rel. Williams v Follette, 30 AD2d 693, affd 24 NY2d 949; People v Lynch, 40 AD2d 856; People v Allen, 18 AD2d 840.)
The reliance placed by defendant on Robinson v Neil (409 US 505), we think is misplaced. The "practical result” language there used that the double jeopardy guarantee prevents a trial from taking place at all is not determinative because in Robinson the court was considering only the retroactivity of Waller v Florida (397 US 387) and not the effect of a guilty plea on a double jeopardy defense. The Supreme Court made that clear in its discussion of the Robinson case in the Black-ledge opinion (p 31).
Double jeopardy, then, is, and historically has been, treated as a defense which is waivable if not timely asserted. Black-ledge, a due process holding, does not change this. While the practical effect of a double jeopardy defense may be to prevent a trial from taking place, it must first be affirmatively raised. We believe that the instant case is controlled by the line of cases culminating in Tollett v Henderson (411 US 258, especially at pp 266-267) and conclude that the defendant having entered a knowing and intelligent plea of guilty with advice of counsel and in accordance with the then existing constitutional law of double jeopardy, waived his right not to be twice subjected to the risk of punishment for the same offense. (See Blackledge v Perry, supra, p 30.)
Most important in this analysis and that of the Supreme Court in the Blackledge case is that before a guilty plea will not work a waiver, there must be or have been a vindictive or retaliatory escalation of crime charged or sentence for a *62 defendant who pursued his constitutional rights, a circumstance totally absent here. A similar preclusion of waiver may arise if the plea proceedings are directly affected by the antecedent unconstitutionality (see Tollett v Henderson, supra, p 267).
Accordingly, we adhere to our original decision of affirmance dated May 9,1974.